O

JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| HOLLYWAY CLEANERS & LAUNDRY COMPANY, INC.; MILTON CHORTKOFF; BURTON CHORTKOFF; EDYTHE CHORTKOFF; WILMA CHORTKOFF,<br><br>       Plaintiffs,<br>    v.<br>CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, INC.,<br>       Defendant. | Case No. 2:13-cv-07497-ODW(Ex)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [17] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]** |

## I.   INTRODUCTION

The instant action arises from an insurance coverage dispute between insureds, Plaintiffs Hollyway Cleaners & Laundry, Inc., Milton Chortkoff, Burton Chortkoff, Edythe Chortkoff and Wilma Chortkoff, and their carrier, Defendant Central National Insurance Company of Omaha, Inc. Plaintiffs allege Defendant breached, and continues to breach, its duty to defend in an underlying action potentially covered by their insurance policy. Defendant contends there is no duty to defend because the policy does not cover the environmental damage in the underlying action. Plaintiffs

filed a Motion for Partial Summary Judgment, and Defendant filed a Motion for Summary Judgment. (ECF Nos. 17, 23.) For the reasons discussed below, the Court **DENIES** Plaintiffs' Motion and **GRANTS** Defendant's Motion.[1]

## II. FACTUAL BACKGROUND

### A. The Policy

Central National Insurance Company of Omaha, Inc. ("CNI") issued a standard comprehensive general liability insurance policy ("the Policy") to Hollyway Cleaners & Laundry Co., Inc. ("Hollyway"), Milton Chortkoff, and Burton Chortkoff. (P. SUF ¶ 1.) Under the Policy, Milton and Burton Chortkoff's wives, Edythe Chortkoff and Wilma Chortkoff, are also insureds.[2] (*Id*. ¶ 2.)

Originally, the Policy was issued for a three-year period from November 1, 1983 to November 1, 1986, but was cancelled on November 1, 1985. (*Id*. ¶ 3.) The Policy limits liability to $500,000 per occurrence, in the aggregate, and per year. (*Id*. ¶ 4.) According to the Policy:

> CN will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages of . . . property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the Named Insured at or from the insured premises, and CN shall have the right and duty to defend any suit against the Insured, seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false, or fraudulent. . . .

(*Id*. ¶ 5.) The Policy contains a "chemical discharge exclusion," which provides that:

---

[1] After carefully considering the papers filed in support of and opposition to the Motions, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] To avoid confusion, the Court references individual Plaintiffs by their first name since they all share the same last name.

> [t]his insurance does not apply * * * to . . . property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(*Id*. ¶ 6.)

### B. The Underlying Action

On February 4, 2013, Echo Complex, Inc. ("Echo") filed suit in Los Angeles Superior Court—*Echo Complex, Inc. v. Hollyway Cleaners & Laundry Co., Inc., et al.*, No BC500453 ("Underlying Action"). (*Id*. ¶ 7.) Hollyway and the Chortkoffs were sued for allegedly causing environmental contamination to the soil and groundwater at and around the site where their dry cleaning business was located. (*Id*. ¶ 12.) The complaint states the following causes of actions: (1) indemnity and contribution under California's Hazardous Substance Account Act; (2) negligence; (3) trespass; (4) nuisance; and (5) declaratory relief.[3] (*Id*. ¶ 8.)

Echo owns the property located at 1157-1159 Echo Park Avenue, Los Angeles, California, a multi-unit commercial property with a dry cleaner since at least 1941. (*Id*. ¶ 10.) Echo alleges that Defendants, including Hollyway, Fatehali Amersi ("Amersi"), Valetor, Inc. ("Valetor"), Charlie Yi, and Song Yi, are the former owners and operators of the dry cleaner; Hollyway operated the dry cleaner from 1946 through 1985; the soil and groundwater on and around the property are contaminated with PCE—a dry cleaning solvent and "hazardous substance" under relevant law; such contamination was accidentally, negligently, recklessly, and/or deliberately caused by all or some of the defendants during their respective ownership and/or operation of the property; the contamination has migrated to, and damaged, other

---

[3] On August 6, 2013, Echo amended its Complaint and added Milton and Burton as defendants. (*Id*. ¶ 24.)

properties and will continue to migrate to, and damage, other properties until it is remediated; and defendants are liable for indemnity or contribution to address the contamination. (*Id*. ¶¶ 10–15.)

On May 29, 2013, Amersi and Valetor filed a cross-complaint against cross-defendants Hollyway, Hollyway Real Property & Development Corporation, Milton, Burton, Edythe, and Wilma. (*Id*. ¶ 16.) The cross-complaint states the following causes of action: (1) breach of a stipulated judgment; (2) express indemnity; (3) implied equitable indemnity; and (4) contribution. (*Id*. ¶ 17.)

Amersi and Valetor allege that Hollyway owned and operated a dry cleaning business on the property; Milton and Edythe own 50 percent of Hollyway shares; Burton and Wilma also own Hollyway shares; the Chortkoffs assumed all liabilities of Hollyway upon its dissolution; and "[t]he liability that either of Cross-Complainants may have, if any, to any person or governmental entity . . . related to the pollution of the property, is the result of Cross-Defendants' active intentional or negligent conduct which took place prior to Cross-Defendant Valetor's possession and occupancy of the property." (*Id*. ¶¶ 18–22.) Amersi and Valetor amended their cross-complaint twice, and the court in the Underlying Action dismissed their final pleading. (*Id*. ¶¶ 25–27.)

On April 30, 2014, Charlie Yi and Song Yi filed a cross-complaint against cross-defendants Hollyway, Milton, Burton, Amersi, and Valetor. (*Id*. ¶ 28.) The cross-complaint states the following causes of action: (1) equitable indemnity; (2) contribution/comparative indemnity; and (3) declaratory relief. (*Id*. ¶ 29.) Yi alleges that cross-defendants caused or contributed to the presence of hazardous materials in, on and under the property by negligently or recklessly causing or permitting sudden or accidental discharges of hazardous material through their acts or omissions. (*Id*. ¶ 30.)

On June 17, 2014, the parties requested the court in the Underlying Action vacate the November 14, 2014 trial date so they could investigate and remediate the property, as required by an oversight agency, and negotiate a cost-sharing settlement

agreement to avoid the need for trial. (*Id.* ¶ 34.) On June 20, 2014, the court vacated the trial date. (*Id.* ¶ 35.)

## C. Coverage Dispute and Instant Action

Three days after Echo filed suit, Bret Stone, *Cumis* counsel for Hollyway, tendered the complaint to CNI. (*Id.* ¶ 36.) "CNI agreed to defend Hollyway, under a reservation of rights, in its capacity as a dissolved corporation." (Lowe Decl., Ex. H.)[4] After the individual Chortkoffs were added as defendants in the Underlying Action, CNI denied that it had any duty to "fund a defense in which the interests of the individual Chortkoffs, whom CNI was not defending, were prioritized over the different and conflicting interests of Hollyway as a dissolved corporation, which CNI was defending." (Lowe Decl., Ex. I; 5/28/14 Ogle Depo. p. 70, lines 5–25, p. 72, line 7 to p. 74, line 18, p. 75, lines 15–22.)

According to CNI, the Underlying Action "is directly related" to a 1989 federal lawsuit—*Sunset/Echo Corporation v. Hollyway Real Estate and Development*, *et al.*, No. 89-1490 WMB ("1989 Action"). (D. Mot. 1.) CNI alleges that, during their depositions, Milton and Burton could not recall any chemical leaks or spills at the property, including any spills resulting from the delivery of chemicals, transfer of clothes from the cleaner to the dryer, or from an earthquake or any other natural event. (*Id.* at 2.) CNI further alleges that Milton and Burton admitted that "the regular practice at Hollyway Cleaners was the intentional and deliberate disposal of the chemical waste – i.e. 'muck' – and/or the filters containing the chemical waste into the dumpster and other trash receptacles on the Subject Property." (*Id.*) "CNI ultimately

---

[4] In a seven-page letter dated April 19, 2013, Jeffrey Ogle, CNI's Senior Vice President, detailed the allegations against Hollyway, provided excerpts of the Policy, including the chemical discharge exclusion, and explained that CNI would not defend the individual Chortkoffs should they become parties to the litigation. Ogle stated: "Notwithstanding the above, CN does agree to defend Hollyway Cleaners & Laundry Co., Inc. and will allow you to represent Hollyway Cleaners & Laundry Co., Inc. pursuant to Civil Code, Section 2860 under a FULL AND COMPLETE RESERVATION OF RIGHTS OF CN." (Lowe Decl., Ex. H.)

became aware of this deposition testimony and relied on the evidence provided therein as part of its evaluation of the duty to defend [Hollyway and the Chortkoffs] in the Underlying Case." (*Id.*)

On September 23, 2013, Hollyway and the Chortkoffs filed suit against CNI in Los Angeles Superior Court for: (1) declaratory relief; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) unjust enrichment. (ECF No. 1.) On October 9, 2013, CNI removed the action to federal court. (*Id.*)

On July 23, 2014, Plaintiffs filed a Motion for Partial Summary Judgment. (ECF No. 17.) Plaintiffs seek summary judgment on their first three causes of action on the grounds that: (1) Defendant has a duty to defend Hollyway and the Chortkoffs against the complaint and cross-complaints filed in the Underlying Action; (2) Defendant breached, and continues to breach, its duty to defend; and (3) Defendant's breach was in bad faith. (P. Mot. 2.) This Motion is currently before the Court for decision.

On July 24, 2014, Defendant filed a Motion for Summary Judgment. (ECF No. 23.) Defendant seeks summary judgment and opposes Plaintiffs' Motion on the same grounds: "there has never been a duty to defend because the extrinsic evidence available to CNI conclusively demonstrates that the environmental damage alleged in the Underlying Case is not covered" under the terms of the Policy's chemical discharge exclusion. (D. Mot. 1; D. Opp'n 2.) The Motion is also currently before the Court for decision.

On November 25, 2014, Plaintiffs filed an Ex Parte Application requesting the Court stay portions of its ruling on Defendant's Motion for Summary Judgment and portions of its ruling on Plaintiffs' Motion for Partial Summary Judgment. (ECF No. 53.) The Court stayed the matter in its entirety. (ECF No. 56.) On January 1, 2015, Plaintiffs filed an Ex Parte Application for Reconsideration, which the Court denied.

(ECF Nos. 57, 59.) On February 23, 2015, Plaintiffs filed a Motion to Lift the Stay of the Entire Action, which the Court granted. (ECF No. 60, 64.)

### III. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," the Court may grant summary judgment. *Id.* at 249–50 (citation omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).

The moving party has the burden of demonstrating the absence of genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party satisfies its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

"It is well-settled in this circuit and others that the filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. A summary judgment cannot be granted if a

genuine issue as to any material fact exists." *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir.1978).

## IV. DISCUSSION

In their respective Motions for Summary Judgment, Plaintiffs and Defendant address: (1) whether Defendant has a duty to defend; (2) whether Defendant breached, and continues to breach, that duty; and (3) whether Defendant's breach was in bad faith.

*A. Duty to Defend*

Plaintiffs allege there is no genuine dispute as to any material fact regarding Defendant's duty to defend. (P. Mot. 14.) Defendant concedes the Policy includes a duty to defend; however, Defendant contends that extrinsic evidence "conclusively demonstrates there were no sudden or accidental discharges of chemicals into the ground and thus . . . the claims against Plaintiffs in the Underlying Case cannot be covered by the Policy." (D. Opp'n 5.)

A federal court sitting in diversity jurisdiction applies federal procedural law and state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Therefore, in the instant diversity action, the Court applies California substantive law.

"The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276–77 (1966)) (original emphasis). Whether an insurer has a duty to defend turns on "those facts known by the insurer at the inception of a third party lawsuit, even though the face of the complaint does not reflect a potential for liability under the policy." *Id.* at 295 (quoting *Saylin v. California Ins. Guarantee Assn.*, 179 Cal. App. 3d 256, 263 (1986)). Thus, "the insurer must defend in some lawsuits where liability under the policy fails to materialize." *Id.* at 299 (citing *Gray*, 65 Cal. 2d at 263). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the

insured's favor." *Id.* at 299–300.

The insured and the insurer do not bear the same burden of proof in an action seeking declaratory relief on the issue of the duty to defend:

> [t]o prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

*Id.* at 300.

   i.   <u>Waiver</u>

Plaintiffs argue that Defendant "waived its right to contest coverage by failing to timely reserve that right." (P. Opp'n 1.) In two March 28, 2013 emails, Defendant agreed to defend Hollyway but did not reserve its right to contest coverage. In a letter dated three weeks later, Defendant again agreed to defend Hollyway but explained that it would not defend the different and conflicting interests of the Chortkoffs, should the Chortkoffs become parties to the litigation. Defendant agreed to defend Hollyway "under a FULL AND COMPLETE RESERVATION OF RIGHTS OF CN."

Plaintiffs do not offer any authority that requires an insurer reserve its right to contest coverage the instant it agrees to defend an insured. Plaintiffs cite *Miller v. Elite Ins. Co.*, 100 Cal. App. 3d 739, 754 (1980); however, in *Miller* the court found waiver because the insurer *never* reserved its right to contest coverage or communicated that there was a coverage dispute. That is not the case here. Furthermore, Plaintiffs do not claim that they suffered prejudice or any other harm

because Defendant reserved its right to contest coverage three weeks after agreeing to defend. Therefore, the Court finds that Defendant timely reserved its right to contest coverage.[5]

    ii.    <u>Extrinsic Evidence</u>

Because the parties agree the Policy includes a duty to defend, the Court must determine whether extrinsic evidence eliminates the possibility of coverage under the Policy and thus Defendant's duty to defend.

The extrinsic evidence at issue is Milton and Burton's deposition testimony from the 1989 Action, which was filed decades before the Underlying Action. During their depositions, Milton and Burton explained that the regular practice at Hollyway for disposing of chemical waste and filters containing chemical waste was to throw such materials in the dumpster and other trash receptacles on the property. From this, Defendant determined that Plaintiffs conduct fell under the Policy's chemical discharge exclusion. Finding no evidence that "such discharge, dispersal, release or escape" of chemical waste was "sudden and accidental," Defendant concludes that it has no duty to defend.

Plaintiffs object to the admissibility of Milton and Burton's deposition transcripts on three grounds. (P. Opp'n 7.) Plaintiffs argue the transcripts are inadmissible because: (1) Defendant violated Federal Rule of Civil Procedure 26(a)(1)(A)(ii) by not identifying this extrinsic evidence in its initial disclosures or discovery responses until after the close of discovery and after the parties had already filed their summary judgment motions; (2) they are prejudicial to Hollyway and the

---

[5] Plaintiffs also argue that "[e]ven if CNI had not waived its right to contest coverage by failing to timely reserve that right, it nevertheless forfeited that right by breaching its duty to defend." (P. Opp'n 6.) The Court rejects this argument on the grounds that it assumes, but does not prove, Defendant has a duty to defend.

Chortkoffs in the Underlying Action; and (3) they are disputed.[6] (*Id.*)

While the Court recognizes, and Defendant concedes, the transcripts were not disclosed during Defendant's initial disclosure, once CNI began preparation of its summary judgment motion and it became clear that the transcripts would be an active part of CNI's defense, CNI timely filed supplemental discovery responses to specifically identify these transcripts. (D. Reply 6.) Pursuant to 26(e)(1)(A), a party:

> who has made a disclosure under 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A). Therefore, Defendant followed proper procedure. Furthermore, Plaintiffs do not claim that they suffered any prejudice.

Plaintiffs refuse "to say more" about their prejudice argument because "[t]heir liability in the Underlying Case is still at issue." (P. Opp'n 10.) The Court acknowledges that "[t]he law does not require insureds to prove their own liability or to otherwise prejudice themselves in a pending liability action in order to obtain a defense to that liability in that action from their insurer." (*Id.*) (citing *Scottsdale Ins. Co. v. MVTransp.*, 36 Cal.4th 643, 661–62 (2005). However, in the instant action, Plaintiffs, not Defendant, moved for the Court to lift its stay of the entire action. (ECF No. 60.) Plaintiffs, not Defendant, created this predicament. Any potential prejudice that Plaintiffs might suffer in the Underlying Action does not absolve Plaintiffs of their burden at the summary judgment stage in the instant action.

---

[6] Plaintiffs also make a half-hearted attempt to dispute the authenticity of the deposition transcripts. (P. Evid. Obj. 4.) However, Plaintiffs do not dispute that Milton and Burton had their depositions taken and made the alleged admissions. Therefore, the Court will not delay its ruling or force Defendant to incur the unnecessary cost of presenting these transcripts in their entirety.

The Court rejects Plaintiffs' argument that the extrinsic evidence is inadmissible because it is disputed. This argument goes to the weight, not admissibility.

Milton and Burton's deposition testimony shows that, over twenty-four years before Echo and Yi filed suit, the regular practice at Hollyway was disposing of chemical waste and filters containing chemical waste in the dumpster and other trash receptacles on the property. Such "discharge, dispersal, release or escape" of chemical waste is neither "sudden" nor "accidental" and therefore not covered by the Policy. The Court finds that this extrinsic evidence conclusively eliminates the possibility of coverage under the Policy.

Defendant has satisfied its burden of production by presenting affirmative evidence that there were no sudden or accidental chemical discharges while Plaintiffs owned the property. This negates an essential element of Plaintiffs' claim and shows that Plaintiffs do not have sufficient evidence to carry their ultimate burden of persuasion at trial. Therefore, the burden shifts to Plaintiffs to produce evidence to support their claims and show that there is a genuine issue of material fact.

Plaintiffs argue that "to eliminate a duty to defend, [extrinsic evidence] must be undisputed and must conclusively eliminate any potential for coverage under the policy." (P. Opp'n 9) (citing *Montrose*, 6 Cal. 4th at 300–01.) Plaintiffs dispute that Milton and Burton's deposition testimony from the 1989 Action represents the *only* evidence as to the nature of chemical discharges at Hollyway while owned and operated by Plaintiffs. In other words, the Court concludes, Plaintiffs *do not dispute* Milton and Burton's admissions during their depositions.

Plaintiffs argue that it is "possible that a sudden and accidental release that caused the property damage during the CNI Policy could be discovered during the course of the Underlying Case." (P. Opp'n 9.) However, a good many things are technically possible but Plaintiffs fail to produce a single piece of evidence to show

that this possibility contributed to or caused the contamination. Plaintiffs' speculation is not sufficient to create a genuine issue of material fact. Plaintiffs must, and have failed to, provide evidentiary support to substantiate their claims.

## V. CONCLUSION

The Court finds that there is no genuine dispute as to any material fact regarding the absence of Defendant's duty to defend. As a result, the Court need not address issues of breach and bad faith. For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment. (ECF Nos. 17, 23.)

**IT IS SO ORDERED.**

April 23, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**