**O**

# United States District Court
# Central District of California

HOLLYWAY CLEANERS & LAUNDRY COMPANY, INC.; MILTON CHORTKOFF; BURTON CHORTKOFF; EDYTHE CHORTKOFF; WILMA CHORTKOFF,

Plaintiffs,

v.

CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, INC,

Defendant.

Case No. 2:13-cv-07497-ODW(E)

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [84], DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [90], AND DENYING DEFENDANT'S REQUEST TO DELAY OR DENY PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT [85]**

## I. INTRODUCTION

This action arises from an insurance coverage dispute between insureds, Plaintiffs Hollyway Cleaners & Laundry, Inc., Milton Chortkoff, Burton Chortkoff, Edythe Chortkoff, and Wilma Chortkoff (collectively, "Plaintiffs"), and their insurance carrier, Defendant Central National Insurance Company of Omaha, Inc. ("CNI"). Plaintiffs allege that CNI has a duty to defend them in an underlying environmental contamination lawsuit. (Compl. ¶ 1, ECF No. 1, Ex. 1.) In April 2015, this Court granted summary judgment in CNI's favor on Plaintiffs' claims. (ECF No.

65.) The Ninth Circuit reversed, concluding that there was a genuine dispute as to whether CNI was required to provide a defense to Plaintiffs in the underlying environmental litigation. (Memorandum from the Ninth Circuit Court of Appeals 3, ECF No. 76.)

Following remand, Plaintiffs renewed their Motion for Partial Summary Judgment as to Duty to Defend and Breach of Duty to Defend. ("First MSJ," ECF No. 84.) While the First MSJ was still pending, Plaintiffs filed an additional Motion for Partial Summary Judgment on the defense obligation, but this time arguing that CNI also had a duty to provide independent (*Cumis*) counsel. ("Second MSJ," ECF No. 90.) Both Motions are now before the Court for consideration.[1] CNI asks that the Court deny or delay the First MSJ in order to allow time to take discovery. (*See* Def. Request to Delay or Deny Pl. Renewed Motion for Summary Judgment to Allow Time to Take Discovery ("Def. Request"), ECF No. 85.)

For the reasons discussed below, the Court hereby **GRANTS** Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Duty to Defend (ECF No. 84); **DENEIS** Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Duty to Defend through Independent Counsel (ECF No. 90); and **DENIES** Defendant's Request to Delay or Deny Plaintiffs' Renewed Motion for Summary Judgment to Allow Time to Take Discovery (ECF No. 85).

## II. FACTUAL BACKGROUND

CNI issued a standard comprehensive general liability insurance policy ("the Policy") to Hollyway Cleaners & Laundry Co., Inc. ("Hollyway"), Milton Chortkoff, and Burton Chortkoff. (Pl. Statement of Uncontroverted Facts for the First Motion for Partial Summary Judgment ("Pl. SUF1") ¶¶ 1–2, ECF No. 84-1.) Under the Policy,

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Milton and Burton Chortkoff's wives, Edythe Chortkoff and Wilma Chortkoff, are also insured.[2] (*Id.* ¶¶ 3–4.)

**A. Terms of the Policy**

Originally, the Policy was issued for a three-year period from November 1, 1983, to November 1, 1986, but it was cancelled on November 1, 1985. (*Id.* ¶ 1.) According to the Policy:

> [CNI] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the Named Insured at or from the insured premises, and [CNI] shall have the right and duty to defend any suit against the Insured, seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false, or fraudulent. . . .

(*Id.* ¶ 5.) The Policy contains a "chemical discharge exclusion," which provides:

> [t]his insurance does not apply to . . . property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(*Id.* ¶ 8.) Further, the Policy is void if "the insured has concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance or the subject thereof, or if the insured shall make any attempt to defraud [CNI] either

[2] To avoid confusion, the Court references individual Plaintiffs by their first name since they all share the same last name.

before or after loss." (Def. Statement of Additional Uncontroverted Facts for the First Motion for Partial Summary Judgment ("Def. SUF1") ¶ 42, ECF No. 86-1.) The Policy is also void if the insured willfully conceals or mispresents any material fact within the context of the insured-insurer relationship. (*Id.* ¶ 41.)

**B. The Underlying Action**

On February 4, 2013, Echo Complex, Inc. ("Echo") filed a suit in the Los Angeles Superior Court against Plaintiffs herein, styled as *Echo Complex, Inc. v. Hollyway Cleaners & Laundry Co., Inc., et al.*, Case No. BC500453 ("Underlying Action"). (Pl. SUF1 ¶ 9.) Echo sued Hollyway and the Chortkoffs for allegedly causing environmental contamination at and around the site where their dry cleaning business was located. (*Id.* ¶ 12.) The complaint states the following causes of actions: (1) indemnity and contribution under California's Hazardous Substance Account Act; (2) negligence; (3) trespass; (4) nuisance; and (5) declaratory relief.[3] (*Id.* ¶ 10.)

Echo owns the property located at 1157-1159 Echo Park Avenue, Los Angeles, California, a multi-unit commercial property with a dry cleaner since at least 1941. (*Id.* ¶ 9.) Echo's Complaint against Hollyway and the Chortkoffs alleges, among other things, that Hollyway and the Chortkoffs "negligently handled, controlled, failed to control, disposed, released, remediated, or failed to remediate" a dry cleaning solvent called Perchloroethylene ("PCE"), which contaminated the soil and groundwater at the commercial property. (*Id.* ¶ 11.)

On May 29, 2013, Fatehali Amersi and Valetor, Inc. (collectively, "Amersi/Valetor") filed a cross-complaint in the Underlying Action against cross-defendants Hollyway, Hollyway Real Property & Development Corporation, Milton, Burton, Edythe, and Wilma. (*Id.* ¶ 13.) The cross-complaint states the following causes of action: (1) breach of a stipulated judgment; (2) express indemnity; (3)

[3] On August 6, 2013, Echo amended its Complaint and added Milton and Burton as defendants. (*Id.* ¶ 12.)

implied equitable indemnity; and (4) contribution. (*Id.*)

On April 30, 2014, Charlie Yi and Song Yi filed a cross-complaint in the Underlying Action against cross-defendants Hollyway, Milton, Burton, Amersi, and Valetor. (*Id.* ¶ 18.) Yi alleges that cross-defendants caused or contributed to the presence of hazardous materials in, on, and under the property by negligently or recklessly causing or permitting sudden or accidental discharges of hazardous material through their acts or omissions. (*Id.*)

**C. Coverage Dispute and Instant Action**

Through their independent counsel at the time, Bret Stone, Plaintiffs tendered their defense of each of the claims in the Underlying Action to CNI. (*Id.* ¶¶ 21–34.) In response, CNI's Senior Vice President, Jeffrey K. Ogle, sent a letter to Mr. Stone on April 19, 2013 (hereinafter referred to as "Reservation of Rights Letter"). (Pl. Statement of Uncontroverted Facts for the Second Motion for Partial Summary Judgment ("Pl. SUF2") ¶ 23, ECF No. 90-1.) The letter stated in part that "an inherent and actual conflict of interest exists" between two of CNI's insureds (Hollyway and Amersi/Valetor) and between CNI and its insureds. (*Id.*) The letter disputed that the PCE contamination (the subjection of the Underlying Action) was sudden or accidental. (*Id.* ¶ 24.) However, the letter further states, "Notwithstanding the above, [CNI] does agree to defend Hollyway Cleaners . . . and will allow you [Mr. Stone] to represent Hollyway Cleaners . . . under a FULL AND COMPLETE RESERVATION OF RIGHTS OF [CNI] . . . ." (*Id.* ¶ 27.) The letter repeats this reservation of rights, explaining, "CNI does reserve all of its rights . . . The preceding reservations specifically include the right to disclaim . . . any obligation to defend . . . ." (*Id.*) Also in the Reservation of Rights Letter, Mr. Ogle referenced $800,000 purportedly paid to Plaintiffs herein in the course of settling a 1989 federal lawsuit—*Sunset/Echo Corporation v. Hollyway Real Estate and Development, et al.*, Case No. 89-1490 WMB ("1989 Action"). (*See* Def. SUF1 ¶ 43.) The letter notes that the $800,000 was to be used to remediate the property that is the subject of the

Underlying Action (and the 1989 Action), and Ogle states in the letter that CNI has not been able to determine whether the money was actually used to remediate the property. (*Id.*) The letter goes on to say that if CNI discovers that the money was not used to remediate the property, it will seek full reimbursement for the amount that it contributed to the settlement of the 1989 Action (allegedly an amount of $50,000). (*Id.*)

A few months after the Reservations of Rights Letter was sent, on July 29, 2013, Mr. Ogle sent Mr. Stone a letter attempting to terminate Mr. Stone's representation of Hollyway Cleaners. (Pl. SUF2 ¶ 31.) Mr. Stone continued to represent Hollyway, and Mr. Ogle sent two additional letters instructing Mr. Stone to cease representation of Hollyway. (*Id.* ¶¶ 30—32.) Mr. Ogle's attempts to terminate Mr. Stone's representation were apparently based on billing entries that did not correspond to the defense of Hollyway. (*See id.*)

Thus far, CNI has not paid any of Hollyway Cleaners' attorneys' fees or costs incurred in connection with Mr. Stone's defense in the Underlying Action. (Pl. SUF2 ¶ 33.)

## III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be supported by more than a scintilla of evidence. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

An insurer owes a duty to defend its insured if the claims in the underlying action create even a potential for coverage. *Anthem Elecs., Inc. v. Pac. Emplrs. Ins. Co.*, 302 F.3d 1049, 1055 (9th Cir. 2002). If the insured moves for summary judgment regarding the duty to defend, the insured's burden is to make a *prima facie* showing that there is a potential for coverage under the policy. *See, e.g.*, *id.* at 1059; *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 300, 304 (1993); *Vann v. Travelers Cos.*, 39 Cal. App. 4th 1610, 1614 (1995). If the insured meets this burden, then the insurer faces the burden of proving that there is no possibility that the claim is covered. *Montrose*, 6 Cal. 4th at 300, 304. Any doubt as to whether the duty to defend exists must be resolved in favor of the insured, and thus the Court must find that there is a duty to defend for purposes of summary judgment. *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010).

Finally, in some types of conflict of interest situations, the insurer must provide not only a defense for the insured, but an independent attorney selected by the insured. *See, e.g.*, *Previews, Inc. v. Cal. Union Ins. Co.*, 640 F.2d 1026, 1028 (9th Cir. 1981). This type of independent counsel situation is known as *Cumis* counsel, emanating from the California case *San Diego Federal Credit Union v. Cumis Insurance Society, Inc.*, 162 Cal. App. 3d 358 (1984). *Cumis* was later codified in California Civil Code Section 2860, which clarifies the rights of the insurer in conflict of interest situations.

The statute provides, "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage." Cal. Civ. Code § 2680(b). However, a conflict does exist where an insurer "reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." *Id.* Thus, the scope of conflicts of interest requiring the provision of independent counsel is narrow. "Where the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel." *Federal Ins. Co. v. MBL, Inc.*, 219 Cal. App. 4th 29, 42 (2013) (internal quotations omitted).

## IV. DISCUSSION

Plaintiffs have, in essence, submitted a first Motion for Partial Summary Judgment on the issue of whether CNI has a duty to defend in the underlying action, and a second Motion for Partial Summary Judgment as to whether that duty to defend means that CNI must provide *independent* counsel due to a conflict of interest. Because the Motions are closely related, the Court addresses both matters together in this Order.

### A. CNI's Request to Delay/Deny Motion for Partial Summary Judgment to Allow Time to Take Discovery

As a preliminary matter, CNI opposes Plaintiffs' First MSJ by requesting that it be delayed or denied until CNI has had adequate time to conduct discovery. (*See* Def. Request.) CNI submits the Declaration of its attorney, Derrick Lowe ("Lowe Decl."), in support of its request. The Declaration explains that CNI did not conduct any discovery while this matter was on appeal. (Lowe Decl. ¶¶ 4–5.) The Declaration also asserts that CNI has good cause for not having the necessary discovery, including that Milton and Burton refused to appear for the re-taking of their depositions. (*Id.* ¶¶ 7–8.)

Federal Rule of Civil Procedure 56(d) allows a court to deny or defer consideration of a motion for summary judgment where the nonmovant shows by affidavit or declaration that it cannot present facts essential to justify its opposition. To obtain such relief, the party requesting such relief must establish: (1) specific reasons why the alleged evidence was not discovered or obtained earlier in the proceedings ("good cause"); (2) specific facts it hopes to elicit from additional discovery; (3) that the facts sought actually exist; and (4) that these sought-after facts would overcome the opposing party's Motion for Summary Judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). The purpose of Rule 56(d) relief is to prevent the nonmoving party from being "railroaded" by a summary judgment motion that is filed too soon after the start of a lawsuit for the nonmovant to properly oppose it without additional discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

There is a litany of examples of CNI not diligently pursuing discovery up to this point. For one, though CNI states that it wishes to re-depose the Chortkoffs due to their refusal to answer certain questions at their original deposition, which took place on July 14, 2014, it never filed a motion to compel responses to those questions that it already asked. (Declaration of Raymond Hamrick, III ("Hamrick Decl.") ¶ 5, Pl. Response and Objection to Def. Request, ECF No. 88-1.) Further, CNI never obtained leave of this Court to re-depose the Chortkoffs, as is required by Federal Rule of Civil Procedure 30(a)(2)(A)(ii). (*See* Case Docket; *see also* Hamrick Decl. ¶ 6.) In fact, CNI has never filed a motion to compel *any* of the discovery it now purportedly seeks. (*See* Case Docket; *see also* Hamrick Decl. ¶ 10.) Instead, CNI has simply listed types of material it would like to now discover and claims that the case being stayed or pending appeal was reason enough not to pursue discovery earlier. (*See* Def. Request ¶ 18.) But based on the substance of CNI's arguments—that Plaintiffs failed to answer questions in their depositions and failed to respond

meaningfully to written discovery requests—it is not reasonable that CNI never moved to compel before the appeal was taken and only brings up the deficiencies in the context of its present Request. As such, the Court declines to delay or deny Plaintiffs' First MSJ in order to allow additional time for discovery.

**B. CNI's Fraud/Void Policy Arguments**

CNI's primary argument in opposing Plaintiffs' First MSJ is that Plaintiffs have ignored and thus not met their burden of demonstrating the potential for coverage as to one of CNI's defenses regarding coverage in the Underlying Action: namely, that the Policy is void due to Plaintiffs' fraud. (Def. Opp'n to First MSJ 5—6, ECF No. 86.) CNI's arguments center on the purported misrepresentations surrounding the remediation of the property at issue as related to the 1989 *Sunset/Echo* case. (*Id.*) CNI latches onto the fact that Plaintiffs' Motion is completely silent on the issue and urges the Court to find that Plaintiffs have failed to meet their initial burden of proof with regard to the First MSJ. (*Id.*)

The problem with this argument is that CNI never pleaded the affirmative defense of voiding the Policy. (*See* Answer, Not. of Removal, Ex. B, ECF No. 1.) Under federal law, a party cannot raise a defense not at issue in its pleadings in order to oppose summary judgment. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991-92 (9th Cir. 2006). Moreover, failure to raise an affirmative defense in the first responsive pleading constitutes a waiver of that defense. *See, e.g., In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007); Fed. R. Civ. P. 8(a), (c).

Because CNI failed to raise any "void"- or "fraud"-based defenses in its Answer, it may not raise this defense now in opposition to Plaintiffs' First MSJ. As a matter of law, CNI's argument that the Policy is void due to fraud do not constitute a defense against CNI's duty to defend Plaintiffs in the Underlying Action.

**C. Existence of "Sudden and Accidental" Spills**

CNI contends that the spills of PCE at the Property were not sudden or accidental, and thus that the "chemical discharge exclusion" to coverage applies. (*See*

Opp'n to First MSJ 7.) If Plaintiffs show that there is a potential that the spills were sudden and accidental (*i.e.*, a potential for coverage), and CNI does not conclusively refute that potential, then CNI owes a duty to defend. *See Anthem Elecs., Inc.*, 302 F.3d at 1054.

Here, Plaintiffs have met their burden of demonstrating that there is a potential for coverage (stated differently, that there is a potential that the exclusion does not apply). First, Plaintiffs point to the substance of the claims in the Underlying Action, noting that the complainants allege "negligent[]" handling of PCE resulting in contamination of the soil and groundwater at the Property. (Pl. SUF1 ¶¶ 11, 13, 18.) This suggests that the actions on which Plaintiffs' liability hinges are alleged to be accidental. Second, Plaintiffs provide Declarations of former employees of Hollyway Cleaners and of independent distributors, originally filed in the *Sunset/Echo* case, as proof of the context and circumstances of releases of PCE at the Property. (*See* Pl. SUF1 ¶¶ 37–39.) The substance of these Declarations implies that the releases of PCE, often in the form of "boil-overs" of the containers, were accidental and/or caused by the negligence of an employee. (*See id.*)

CNI has not met its corresponding burden of conclusively demonstrating that none of the releases of PCE were accidental, nor can it. The Ninth Circuit's decision in reversing and remanding this Court's Order found that the Declarations of an employee, a manager, and an independent distributor do not demonstrate that the spills of PCE that occurred happened with such frequency that they could be considered "expected" (and thus not accidental) as a matter of law. (Memorandum from the Ninth Circuit Court of Appeals 3–4.) Though the Ninth Circuit's decision does not discuss the issue of whether there is a genuine dispute as to whether the spills were "sudden"—the other requirement for chemical releases not to be covered under the chemical exclusion—the spirit of the decision is such that there can be no question as to whether CNI has met its burden here. (*See id.*) CNI argues that because of the time it would take between an employees' negligence and an actual spill for a "boil-over"

to occur, such events cannot be considered "sudden." (Opp'n to First MSJ 7–8.) However, in comparison with the Ninth Circuit decision's use of case law to support its definition of "accidental," CNI provides no support for its definition of "sudden." (*See* Memorandum from the Ninth Circuit Court of Appeals 3–4; Opp'n to First MSJ 7–8.) As such, it appears that reasonable minds could differ as to whether or not the boil-overs could be considered "sudden" for purposes of the chemical discharge exclusion. Moreover, it is the insurer's burden to establish the existence of an exclusion, and CNI has failed to do so, leaving open a real possibility that the exclusion does not apply. *See Jeff Tracey, Inc. v. U.S. Specialty Ins. Co.*, 626 F.Supp.2d 995, 1002 (C.D. Cal. 2009.)

In the relevant context, the existence of an issue of fact such as this one establishes that there *is* a duty to defend, since any doubt as to the existence of the duty must be resolved in favor of the insured. *See Hudson Ins. Co.*, 624 F.3d at 1267. For this reason, the Court determines that CNI owes a duty to defend Plaintiffs in the Underlying Action and **GRANTS** Plaintiffs' First MSJ.

**D. Need for Independent Counsel**

Lastly, Plaintiffs add a layer to their contention that CNI owes them a duty to defend by asserting that the defense must be through independent counsel. (Second MSJ.) Plaintiffs argue that there is a conflict of interest requiring the use of independent counsel. (*Id.* at 12.)

While Plaintiffs do point to a conflict of interest between themselves and CNI, this conflict is not of the kind requiring independent counsel. *See* Cal. Civ. Code § 2680(b). The relevant statute and case law provide that a conflict requiring independent counsel arises only where the insurer reserves its rights on a specific issue that is controllable by the insurer-appointed counsel. *Id.* The issue on which the insurer reserves its rights must be capable of affecting the outcome of the underlying litigation. *See MBL, Inc.*, 219 Cal. App. 4th at 42.

Here, CNI generally reserved all of its rights and, in the Reservation of Rights Letter, specifically referenced its rights regarding the chemical discharge exclusion in the Policy. (Def. SUF1 ¶ 36.) It did not expressly reserve its rights regarding fraud or collusion, defenses that it now attempts to assert in opposing Plaintiffs' First MSJ. (*See id.* ¶ 35.) Importantly, "a general reservation of rights does not give rise to a conflict of interest or create a duty to provide independent counsel." *MBL, Inc.*, 219 Cal. App. 4th at 44. Therefore, there can be no *Cumis*-level conflict of interest as to CNI's assertion of fraud and collusion-based defenses, since CNI did not specifically reserve its rights in that area. (*See* DEF SUF1 ¶ 35.) CNI's other assertions of insured-based conduct pertain to allegations of intentional conduct in the chemical discharges that occurred at the Property. (*See* Opp'n to First MSJ 7—8.) CNI did expressly reserve its rights with regard to the chemical discharge exclusion. (Def. SUF1 ¶ 36.) However, whether or not Plaintiffs intentionally cause the chemical spills at the Property is immaterial to the Underlying Action, because the pleadings in the Underlying Action do not restrict their causes of action to deliberate or intentional acts. (*See* Def SUF1 ¶¶ 37—40.) There is nothing to suggest that CNI-chosen counsel could or would manipulate the defense in the Underlying Action to result in a finding that the chemical spills were intentional. No benefit would apparently derive from doing so. Therefore, CNI's efforts to demonstrate that the contamination was in fact intentional (for purposes of denying insurance coverage) would not undermine Plaintiffs' defense in the Underlying Action. Under the statutory and case law rules requiring independent counsel in certain insurance coverage disputes, the conflict between Plaintiffs and CNI does not require the appointment of independent counsel. *See* Cal. Civ. Code § 2680(b); *MBL, Inc.*, 219 Cal. App. 4th at 42. As such, the Court **DENIES** Plaintiffs' Second MSJ.

## V. CONCLUSION

In sum, the Court **GRANTS** Plaintiffs' First Motion for Partial Summary Judgment (ECF No. 84), **DENIES** Plaintiffs' Second Motion for Partial Summary

Judgment (ECF No. 90), and **DENIES** CNI's Request to Delay or Deny Plaintiffs' Renewed Motion for Summary Judgment to Allow Time to Take Discovery (ECF No. 85).

**IT IS SO ORDERED.**

November 7, 2016

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**