# United States District Court
# Central District of California

| | |
|---|---|
| HOLLYWAY CLEANERS & LAUNDRY COMPANY INC.; MILTON CHORTKOFF; BURTON CHORTKOFF; EDYTHE CHORTKOFF; and WILMA CHORTKOFF,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA INC.; and DOES 1 through 30,<br><br>Defendants. | Case No: 2:13-cv-07497-ODW-E<br><br>**ORDER EXCLUDING FORM PCL 7-81 FROM POLICY & SETTING BENCH TRIAL ON COVERAGE** |

## I. INTRODUCTION

The Court has recited the facts of this case in several other orders. (*See, e.g.*, Nov. 7, 2016 Order, ECF No. 93.) On December 28, 2017, Plaintiffs requested an evidentiary hearing to explore the foundation underlying Jeffery Ogle's testimony regarding the genesis of the subject insurance policy (the "Policy"). (Req. for Evid.

Hearing ("Request"), ECF No. 162.) On February 14, 2018, the Court heard Ogle's testimony. (Mins., ECF No. 166.) Plaintiffs challenged whether Ogle, who purportedly compiled the Policy, has the requisite personal knowledge to have recreated the Policy underlying this coverage dispute. (*Id.* at 2.) Particularly suspect, Plaintiffs allege, is Form PCL 7-81, which does not appear on the Declarations page of the Policy, and bears no other identifying information that would associate it with the Policy. The parties simultaneously filed briefing explaining their positions regarding the import of Ogle's testimony. (ECF Nos. 169–70.) After considering the evidence, pursuant to Federal Rule of Evidence 104(a), the Court finds Ogle does not have the requisite personal knowledge to testify regarding whether Form PCL 7-81 is part of the Policy. Accordingly, the Court **EXCLUDES** Form PCL 7-81.

## II. DISCUSSION

It is undisputed that the original Policy has long been lost or otherwise unavailable. Ogle presented a collection of documents he claimed to be the Policy in his declaration. The fact that an insurance policy is lost or destroyed does not prohibit an insured from asserting coverage under the missing policy, if the insured can prove its contents through other means. *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1070–71 (2002) (discussing and approving of two cases where insured proved it was entitled to coverage where the policy was lost, but the contents were proven through secondary evidence). The burden rests on the insured to prove it was covered by the policy, and on the insurer to prove the substance of any policy provision essential to the insurer's defense. *Id.* at 1071.

A party may present testimony of a witness with personal knowledge to establish the contents of a lost or destroyed insurance policy. *Id.* at 1070; *see also Rogers v. Prudential Ins. Co.*, 218 Cal. App. 3d 1132, 1137 (1990) (holding where an insurance policy is lost or destroyed, a party may prove its contents through "an unsigned copy or by oral evidence"). However, "[a] witness may testify to a matter

only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Generally, a witness must have 'personal knowledge of the matter' to which she testifies." *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) (quoting Fed. R. Evid. 602). Rule 602 "excludes testimony concerning matter the witness did not observe or had no opportunity to observe." *United States v. Lyon*, 567 F.2d 777, 783–84 (8th Cir. 1977) (citation omitted).

At the hearing on February 14, 2018, Ogle testified regarding his knowledge of CNI's practices in assembling "Fabripak" policies, such as the Policy. Ogle testified:

- He has never been employed as an underwriter by any insurance company, but has had some underwriting training through insurance courses (Feb. 14 Tr. 11:9–19, ECF No. 167);
- He does not know who the underwriters were for CNI that assembled the Policy, nor was he in the underwriting department or involved in the underwriting (*id.* at 20:13–21);
- The file from which he assembled what he purports to be the Policy did not have any underwriting documents in it (*id.* at 25:1–5);
- He had never seen the underwriting file for the Policy, and it has been destroyed (*id.* at 22:16–24);
- He never checked to see whether the Form PCL 7-81 that he included in assembling the Policy was identical to what was given to Hollyway. While he could not remember who, someone told him that it was the form that was being used, and he "accepted that as being truthful." (*Id.* at 70:20–71:71:5.)

It was clear from Ogle's testimony at the hearing, that he is simply the last man standing at CNI. Any information he has about the Policy, and its contents, seems to

3

be passed along from prior individuals who *may* have had personal knowledge. However, Ogle himself could not lay proper foundation for his belief that PCL 7-81 was included in the Policy, and thus the Court excludes it. *Bemis*, 45 F.3d at 1373; *see also Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1060 (7th Cir. 1987) (holding that witness could not testify as to safety practices five years before becoming safety director because he was relying on hearsay statements, which were not sufficient to confer personal knowledge).

In light of this ruling, the parties shall meet and confer, and lodge with the Court a copy of the documents remaining and which they agree comprise, at least in part, the Policy. The parties shall lodge this document with the Court before **April 20, 2018**.

### III. TRIAL

Before Hollyway requested an evidentiary hearing, the Court bifurcated this trial, with the first phase to address: "Claim No. 1: Declaratory Relief for Duty to Defend," as noted in parties' Proposed Pretrial Order (ECF No. 135-1). This claim includes the sub-issues of: (1) whether Plaintiffs are entitled to coverage, as owners of the property, under the additional insured endorsement for landlords in the Policy; (2) whether the language in the Policy providing coverage for the "Location of all premises owned by, rented to or controlled by the named insured..." (ECF No. 151-2, Bates No. HvCNI000080) provides coverage for the Echo Park Property; and (3) whether the additional declarations, which Plaintiffs claim "apply to endorsements and declarations attached at inception of the policy" (ECF No. 151-2, Bates No. HvCNI000047), provide coverage for the Echo Park Property.

The issue of whether the CNI Policy provides coverage to Plaintiffs with respect to the Echo Park Property shall also include the following additional sub-issues: (1) whether the 1985 Endorsement that added Valetor, Inc. as a named insured (ECF No. 151-2, Bates No. HvCNI000045) contained sufficient language to remove

Plaintiffs from the Policy and cancel their coverage and, if so, then (2) whether CNI's purported cancellation complied with the statutory requirements for cancellation and was otherwise legally effective to cancel coverage pursuant to California Insurance Code § 677.2.

Now that Form PCL 7-81 has been excluded, the Court sets the first phase of trial for **9:00 a.m., on May 15, 2018**. To the extent the parties have significant scheduling conflicts, they may meet and confer, and jointly request a different date convenient for all parties, but must do so, if at all, before **April 20, 2018**.

**IT IS SO ORDERED**.

April 4, 2018

_____

              **OTIS D. WRIGHT, II**
          **UNITED STATES DISTRICT JUDGE**