# United States District Court
# Central District of California

| | |
|---|---|
| HOLLYWAY CLEANERS & LAUNDRY COMPANY INC.; MILTON CHORTKOFF; BURTON CHORTKOFF; EDYTHE CHORTKOFF; and WILMA CHORTKOFF,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA INC.; and DOES 1 through 30,<br><br>Defendants. | Case No: **2:13-cv-07497-ODW-E**<br><br>**FINDINGS OF FACT & CONCLUSIONS OF LAW AS TO THE FIRST PHASE OF TRIAL** |

## I. INTRODUCTION & PROCEDURAL HISTORY

The Court has recited the facts of this case in several other orders, and incorporates that discussion here by reference. (*See, e.g.*, Nov. 7, 2016 Order, ECF No. 93.) Briefly, Plaintiffs Hollyway Cleaners & Laundry Company Inc., Milton Chortkoff, Burton Chortkoff, Edythe Chortkoff, and Wilma Chortkoff claim they are

entitled to insurance coverage from Defendant Central National Insurance Company of Omaha Inc. They seek a defense and indemnification, under an insurance policy (the "Policy") issued in the 1980s, to a lawsuit filed against Plaintiffs for chemical spills that occurred at a dry cleaner owned and operated by Plaintiffs in Echo Park, California (the "Echo Park Property").

On November 7, 2016, the Court held that Defendant owed Plaintiffs a duty to defend under the Policy because there was at least a potential for coverage. (*Id.* at 12.) The Court also held that Plaintiffs were not entitled to independent counsel. (*Id.* at 12–13.)

Of particular importance to the Court's analysis here is Defendant's new claim that the Echo Park Property was not covered by the Policy. Defendant raised this defense for the first time in the eleventh hour, despite the fact that all parties, this Court, and the Ninth Circuit had assumed the Policy covered the Echo Park Property. (*See* Transcript January 17, 2017, ECF No. 127 (discussing newly raised defense); Def.'s Tr. Brief 5–7, ECF No. 122.) In light of this new defense, the Court bifurcated the issue of whether the Policy covers the Echo Park Property. (*See* Min. Order, ECF No. 159; Order, ECF No. 171.) Since then, in an effort to sort out this archeological endeavor, the Court held multiple hearings addressing the contents of the Policy, and whether it covers the Echo Park Property.

Neither Defendant nor Plaintiffs have the original copy of the Policy. On December 28, 2017, Plaintiffs requested an evidentiary hearing to explore the foundation underlying Jeffery Ogle's testimony regarding the genesis of the Policy. (Req. for Evid. Hearing ("Request"), ECF No. 162.) Ogle worked for Defendant and claimed to have compiled the Policy for purposes of this litigation. (*See* Order 2–4, ECF No. 171.) On February 14, 2018, the Court heard Ogle's testimony. (Mins., ECF No. 166.) After hearing his testimony, the Court excluded Form PCL 7-81 from the Policy because Ogle could not properly lay foundation for its inclusion in the

Policy. (Order, ECF No. 171.) The parties then stipulated and lodged with the Court a collection of documents, totaling 17 pages, which they agree comprise the Policy. (Stip., Ex. A (the "Policy"), ECF No. 172.)

In its Order excluding Form PCL 7-81 from the Policy, the Court also articulated several issues to be addressed at the first phase of the bifurcated trial, which all relate to "Claim No. 1: Declaratory Relief for Duty to Defend," as set forth in the parties' Proposed Pretrial Order. (*Id.* at 3–4; Proposed Pretrial Order, ECF No. 135-1.) On August 7, 2018, the Court heard the first phase of the bifurcated trial, including arguments of counsel, and the testimony of Plaintiffs' expert, David Frangiamore.

Having carefully reviewed and considered the evidence and the arguments of counsel as presented at trial and in their written submissions to date, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such, and vice versa.

## II. DISCUSSION

It is undisputed that the original Policy has long been lost or otherwise unavailable. However, the fact that an insurance policy is lost or destroyed does not prohibit an insured from asserting coverage under the missing policy, if the insured can prove its contents through other means. *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1070–71 (2002) (discussing and approving of two cases where insured proved it was entitled to coverage where the policy was lost, but the contents were proven through secondary evidence). The burden rests on the insured to prove it was covered by the policy, and on the insurer to prove the substance of any policy provision essential to the insurer's defense, including any applicable exclusion or limitation. *Id.* at 1071.

At the hearing, Plaintiffs presented the testimony of their expert, David

Frangiamore, and the Policy to establish coverage.

**A. David Frangiamore**

A party may present testimony of a witness to establish the contents of a lost or destroyed insurance policy. *Id.* at 1070; *see also Rogers v. Prudential Ins. Co.*, 218 Cal. App. 3d 1132, 1137 (1990) (holding where an insurance policy is lost or destroyed, a party may prove its contents through "an unsigned copy or by oral evidence"). Federal Rule of Evidence 702 permits testimony from expert witnesses. In the context of insurance coverage cases, courts permit experts to opine as to the custom and practice of insurance companies generally. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015–19 (9th Cir. 2004) (discussing evidentiary requirements for admitting expert testimony in insurance context); *Barten v. State Farm Mut. Aut. Ins. Co.*, CV-12-00399-TUC-CKJ, 2015 WL 11111309, at *5 (D. Ariz. Apr. 8, 2015) (allowing testimony regarding "insurance standards, practices, and procedures and…whether Defendant's conduct was inconsistent with those standards, practices, and procedures").

Frangiamore testified:

- He is a former in-house attorney for an insurance company, and also acted as a claims adjuster, and then claims manager for nearly a decade;
- He adjusted thousands of claims in his career, and now acts as an expert witness—often addressing claims involving dry cleaners;
- He is familiar with insurance policies written in the 1980s because many of the claims he adjusted concerned polices issued then, despite the losses occurring in the 1990s;
- He has reviewed, analyzed, and previously adjusted claims including several of the forms that comprise the Policy, including Form L 9260 (Policy 12–13);
- Insurance companies issue many policies covering "operations" of the

insured or "locations," and sometimes both;

- He opines that the Policy's language is more consistent with providing coverage for the operations of the insured, as opposed to specific locations of the insured;
- To evaluate coverage, a claims adjuster looks to the declarations page of the insurance policy, and then evaluates what forms, including any supplements or endorsements, comprise the policy.

While Frangiamore's testimony may provide some insight to the custom and practice of the insurance industry generally, it is not determinative of whether the Policy covered the Echo Park Property. The Court must interpret the Policy, as a matter of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).

**B. The Policy**

As discussed previously, the Court already determined that the terms of the Policy afford the possibility of coverage, and triggered Defendant's duty to defend. (Order, ECF No. 93.) Thus, the Court need only examine whether the Policy provides coverage to the Echo Park Property, specifically, and whether Plaintiffs have met their burden to establish the material terms of the insurance policy, since the original is unavailable.

The insured generally has the burden of proving the existence of an insurance contract and its material terms. *Dart*, 28 Cal. 4th at 1071–72 (citing *Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 534 (9th Cir. 1996)). Here, the parties stipulated to the existence of the Policy, and the documents comprising it. (Policy.) Even though some forms included in the Policy appear not to have been filled out, the Policy sufficiently sets forth the material terms, as follows:

- The Declarations page identifies the Plaintiffs as the named insureds: "HOLLYWAY CLEANERS & LAUNDRY COMPANY, INC. & MILT CHORTKOFF, BURT CHORTKOFF INDIVIDUALLY, AS THEIR

INTEREST MAY APPEAR." It also identifies the premiums and period of coverage. (Policy 1.)

- Form L 9260 provides what risks are insured, the exclusions that may apply, and the limits of liability. (Policy 12–13.) *See Dart,* 28 Cal. 4th at 1071–72 (explaining that material terms of policy may change depending on loss and type of coverage afforded); *Nat'l Am. Ins. Co.*, 93 F.3d at 534 (citing Cal. Ins. Code § 381) (discussing material terms of insurance contract); *see also Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822, 828–29 (D. N.M. 1994) (applying New Mexico law, and discussing proof necessary to establish material terms of lost policy).

The sticking point is that the Echo Park Property is not specifically listed on Form L 9260,[1] or on the Declarations page of the Policy. (Policy 1, 12–13.) It is, however, identified in a later amendment to the Policy, which occurred after Valetor, Inc. was substituted as the named insured on the Policy.[2] (*Id.* at 6.) Defendant argues that this indicates that the Echo Park Property was not covered by the Policy until Defendant issued this additional declaration. This interpretation of the Policy is unavailing for two reasons.

First, the Schedule of Insurance that Defendant contends added the Echo Park Property to the Policy states, "The following declarations apply to endorsements attached at inception of the policy." (Policy 6.) The plainest reading of this sentence is that the coverages and property described in the Schedule of Insurance apply to the endorsements and supplements that were attached at the inception of the Policy. *See Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 42 (2005) (citations omitted)

---

[1] Form L 9260 is blank, including the portion that is supposed to identify the specific policy to which it applies. (*See* Policy 12.)

[2] While not determinative of the Court's analysis here, Plaintiffs claim that Valetor, Inc. began operating the dry cleaning business at the time of the substitution, but that Plaintiffs remained the owners of the Echo Park Property.

("The plain meaning of policy language is 'the meaning a layperson would ordinarily attach to it.'") It is undisputed that the Policy identifies Form L 9260, as an endorsement attached at the inception of the Policy. (Policy 1.) Accordingly, the coverages provided in Form L 9260 apply to the Echo Park Property.

Second, and most persuasive, Form L 9260 provides:

> COVERAGE PART  L 9260 (Ed. 1-731)
> COMPREHENSIVE GENERAL LIABILITY INSURANCE
> For attachment to Policy No. _____, to complete said policy.
> ADDITIONAL DECLARATIONS
> Location of all premises owned by, rented to or controlled by the named insured (enter "same" if same location as address shown in item 1 of declarations)
>
> Interest of named insured in such premises (check below)
> ☐ Owner  ☐ General Lessee  ☐ Tenant  ☐ Other _____
> Part occupied by named insured (enter below)

(Policy 12.) This section provides "COMPREHENSIVE GENERAL LIABILITY INSURANCE" to the "[l]ocation of all premises owned by, rented to or controlled by the named insured." (*Id.*) Just as above, the plainest reading of this sentence provides coverage for "all premises owned by, rented to or controlled by the named insured." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666–67 (1995), *as modified on denial of reh'g* (Aug. 31, 1995) ("If the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning."). The reasonable expectations of the insured reinforces this conclusion: A dry cleaner business that identifies its mailing address on the declarations page of an insurance contract would expect that this sentence provides coverage for all of the properties it controls. *Waller*, 11 Cal. 4th at 28–29 (finding that reasonable expectations of an insured may reinforce plain meaning of insurance contract).

In parentheses after the sentence described above, the Form says, "(Enter 'same' if same location as address shown in item of declarations.)." (*Id.*) Defendant argues that this demonstrates that the insured was required to specifically list the covered properties. Plaintiffs counter that, given the broad grant of coverage for "all

premises owned by [the insured]," if Defendant contends that this portion of the Form limited the applicable coverage, then the burden is on Defendant to prove it. *See Dart*, 28 Cal. 4th at 1071–72 (holding burden on insurer to prove exclusion where original policy is lost). The Court agrees.

In the simplest sense, the fact that there is limited space to identify properties after the direction to "enter 'same'" leads the Court to interpret the prior sentence as a broad grant of coverage encompassing all of the named insured's premises. To the extent Defendant contends that the direction in parentheses limits Plaintiffs' coverage in some way, Defendant must prove it, and it has not done so. *Id.* Finally, if Defendant contends that the "enter same" directive is somehow ambiguous, then the Court must interpret the Policy in favor of coverage. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) ("Because the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage."). Accordingly, the Court finds that Plaintiffs met their burden of establishing the material terms of a lost insurance policy, and the most reasonable interpretation of those terms is that Policy covered the Echo Park Property.[3]

///
///
///
///
///
///
///
///

---

[3] Plaintiffs presented other theories as to why the Echo Park Property is entitled to coverage, including because: 1) they were "additional insureds" as landlords under the Policy; and 2) there was never a valid cancellation of the Policy when Defendant substituted Valetor, Inc. as the named insured. However, the Court declines to address these theories given its interpretation of the Policy detailed above.

### III. CONCLUSION

As set forth above, the Policy provided coverage to the Echo Park Property. The Court previously explained why Defendant owed Plaintiffs a duty to defend in the underlying action. (Order, ECF No. 93.) In light of these findings, the Court **ORDERS** the parties to meet and confer, and submit a **revised Proposed Pretrial Conference Order** before **October 1, 2018**. The Court sets a **Pretrial Conference for October 22, 2018, at 1:30 p.m., and Trial for October 30, 2018, at 9:00 a.m.**

**IT IS SO ORDERED**.

August 13, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**